NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-354

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 527289

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe (Doe), appeals from a Superior Court judgment affirming his classification by the Sex Offender Registry Board (SORB) as a level three sex offender.  Doe claims that (1) the hearing examiner's application of risk-elevating factors was arbitrary and capricious and his classification was not supported by substantial evidence; (2) the hearing examiner erred in diagnosing Doe with deviant sexual interests without supporting expert testimony and predicated on facts that do not support the finding; and (3) prior counsel provided ineffective assistance.  We affirm.

Background.  We summarize the facts as found by the hearing examiner, "supplemented by undisputed facts from the record," and reserve certain facts for later discussion.  Doe, Sex

Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd.,
459 Mass. 603, 606 (2011) (Doe, No. 10800).

1. Prior sexual offense allegations. The hearing examiner
heard and credited evidence of allegations of a prior sexual
offense. A six year old girl (victim 1) at a SAIN[1] interview at
the Attleboro police department, stated that, while at Doe's
house in 2003, he showed her "his butt and pee pee" in the
living room after they had watched a movie. Victim 1 pushed Doe
away and told him to leave her alone. On another occasion at
Doe's house, victim 1 reported that Doe stuck a Q-tip into her
vagina. Doe also put his mouth on victim 1's vagina and put his
penis into victim 1's mouth. Victim 1 told her mother that Doe
"rubbed her pee pee" as she was falling asleep. Doe denied
these allegations.

Doe was indicted on two counts of rape of a child with
force and two counts of indecent assault and battery on a child
under fourteen. The indictments were nolle prossed.

2. Index offense. On June 7, 2016, the mother of five
year old victim 2 (victim 2) reported that she and her daughter
visited Doe at the home of one of Doe's female friends. Victim
2 went swimming in the pool at the home, after which Doe and
victim 2 went into a bedroom. When the mother "went to the

---

[1] Sexual Assault Intervention Network.

2

bedroom to find [v]ictim 2," she found the bedroom door closed. Upon opening the door, the mother "saw [Doe] quickly adjust his clothes and pull up his zipper," and saw that victim 2 "had no underwear on and was only wearing a shirt." Following an investigation, forensic scientists found sperm cells on external genital swabs taken from victim 2 and on her underpants. Doe matched the deoxyribonucleic acid (DNA) profile taken from the sperm samples on the interior crotch of victim 2's underpants.

On October 29, 2019, a Superior Court jury convicted Doe of indecent assault and battery on a child under fourteen and unnatural acts with a child under sixteen. Doe was sentenced to from nine and one-half to ten years in prison, later reduced to from four to six years in prison after appeal.

SORB notified Doe that he must register as a sex offender with a preliminary classification of high risk (level three). Doe filed a timely request for an administrative hearing to challenge SORB's preliminary classification. Following a hearing, Doe was classified as a high-risk (level three) sex offender. On June 16, 2023, Doe sought judicial review of his final classification, and a Superior Court judge denied Doe's motion for judgment on the pleadings and affirmed SORB's decision. Doe timely appealed therefrom.

Discussion. 1. Standard of review. A reviewing court may set aside a SORB decision if it determines "that the decision is

3

unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law" (citation omitted).  Doe, Sex Offender Registry Bd. No. 22188 v. Sex Offender Registry Bd., 101 Mass. App. Ct. 797, 801 (2022).  The reviewing court shall "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it."  Doe, Sex Offender Registry Bd. No. 10216 v. Sex Offender Registry Bd., 447 Mass. 779, 787 (2006) (Doe, No. 10216), quoting G. L. c. 30A, § 14 (7).  Doe therefore "bears a heavy burden of establishing that . . . [SORB]'s decision was incorrect" (citation omitted).  Doe, Sex Offender Registry Bd. No. 3177 v. Sex Offender Registry Bd., 486 Mass. 749, 757 (2021).

2.  Classification determination.  a.  Classification as a level three sex offender.  Doe raises several arguments as to why the hearing examiner's decision is arbitrary and capricious or an abuse of discretion.  For the reasons that follow, we disagree.

First, Doe argues that the hearing examiner erred in disregarding a scientific article addressing, inter alia, a sex offender's refusal to engage in sex offender treatment and the alleged impacts (or lack thereof) on the increased risk of

4

reoffense or degree of dangerousness.[2]  The hearing examiner gave the article no weight because "[Doe] did not participate in[] sex offender treatment."  Doe contends that this was error because the article states that there is no correlation between attending or completing sex offender treatment programming and sexual recidivism.  This overstates the article's findings.  Instead, the article states that its conclusion is limited because "the individuals chosen to participate in the program are already the least likely to reoffend, and any impact the program might have on recidivism will be difficult to detect statistically."  Melissa D. Grady, Daniel Edwards Jr. & Carrie Pettus-Davis, *A Longitudinal Outcome Evaluation of a Prison-Based Sex Offender Treatment Program*, 29 SEXUAL ABUSE:  J. RSCH. & TREATMENT  239 (2017).  In any event, the record reflects that the hearing officer did indeed consider the article, and, in our view, did not err in disregarding it.  See 803 Code Mass. Regs. § 1.33(24) (2016).[3]  See also Doe, Sex Offender Registry Bd. No. 524553 v. Sex Offender Registry Bd., 98 Mass. App. Ct. 525, 534

---

[2] Doe submitted fourteen articles focusing on recidivism, age, probation, denial, and sex offender treatment.  Only one article, "A Longitudinal Outcome Evaluation of a Prison-Based Sex Offender Treatment Program," cited infra, is at issue in this appeal.

[3] SORB's regulations were updated in 2025, but the 2016 version of the regulations were in effect at the time of the examiner's decision in this case and therefore govern our analysis.

(2020) (where article failed to make argument Doe sought to make, examiner did not err in giving it little weight).

Second, Doe argues that the hearing examiner applied a checklist approach, which rendered his analysis and decision arbitrary and capricious. The "checklist" approach is indeed unacceptable. See Doe, Sex Offender Registry Bd. No. 11204 v. Sex Offender Registry Bd., 97 Mass. App. Ct. 564, 574 (2020). Here, however, the hearing examiner did more than apply a checklist approach. He wrote a detailed and thoughtful decision, which explicitly tied the facts of Doe's case to variables that SORB's regulations identify as "the strongest predictors of sexual recidivism for all sex offenders" including, inter alia, Doe's relationship to his victims, violent offenses unrelated to sexual assault, and analysis of mitigating factors such as Doe's age. 803 Code Mass. Regs. § 1.33. Cf. Doe, Sex Offender Registry Bd. No. 24341 v. Sex Offender Registry Bd., 74 Mass. App. Ct. 383, 384, 388 (2009) (decision affirming final classification vacated, with remand to SORB, where hearing examiner relied "solely on the characteristics of . . . [offender's] more than twenty year old crime"). The hearing examiner's decision reflects a comprehensive analysis as required by the relevant statutory and regulatory provisions, and thus we discern no abuse of discretion.

Third, Doe argues that the hearing evidence did not support the hearing examiner's finding that Doe sexually assaulted victim 1, thus leading the hearing examiner to misapply two risk-elevating factors. We disagree. "It is the duty of the hearing examiner to assess the reliability of exhibits introduced in evidence and draw therefrom all reasonable inferences." Doe, No. 10800, 459 Mass. at 638. "[H]earsay evidence bearing indicia of reliability constitutes admissible and substantial evidence" (citation omitted). Doe, Sex Offender Registry Bd. No. 339940 v. Sex Offender Registry Bd., 488 Mass. 15, 26 (2021) (Doe, No. 339940). "Substantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Doe, No. 10800, supra at 632, quoting G. L. c. 30A, § 1 (6).

Here, the evidence supports the hearing examiner's finding that victim 1's hearsay statements had substantial indicia of reliability. Victim 1 made specific and detailed statements to medical providers, as well as to police officers who observed her interview discussing the sexual assault. Moreover, these complaints led to criminal indictments and were supported by the Department of Children and Families. We discern no abuse of discretion. See Doe, No. 339940, 488 Mass. at 27.

Fourth, Doe argues that the hearing examiner improperly applied three factors: factor 7, relationship between offender

7

and victim; factor 15, hostility towards women; and factor 16, public place.  See 803 Code Mass. Regs. § 1.33(7), (15), (16).  Doe's argument with respect to factor 7 fails because Doe was a "family friend" whom both victims had known for a significant period.  Moreover, as the hearing examiner found (and the evidence supported), Doe had been placed in a caretaking role with both victims.  These facts met the definition of extrafamilial relationship within the meaning of factor 7.  See 803 Code Mass. Regs. § 1.33(7)(a)(2).  Doe next argues that factor 15 was improperly applied because there was insufficient evidence that he was hostile towards women.  We discern no abuse of discretion in view of the content of the five restraining orders filed by four women.  See Doe, Sex Offender Registry Bd. No. 528042 v. Sex Offender Registry Bd., 496 Mass. 437, 446 (2025) (that two different women took out abuse prevention orders against Doe was sufficient to conclude application of factor 15 was not abuse of discretion).  See also 803 Code Mass. Regs. § 1.33(15)(a) ("Factor 15 is applied when an offender . . . has multiple abuse prevention orders or harassment prevention orders taken out by different women at different times").  Lastly, Doe takes issue with the hearing examiner's application of factor 16, public place, because the sexual misconduct with one of the victims occurred inside the home behind a closed door.  The room did not confer an

8

"expectation of privacy" as three other adults had access to the room and the mother was aware victim 2 had gone into the room to change.  See Doe, Sex Offender Registry Bd. No. 527962 v. Sex Offender Registry Bd., 496 Mass. 543, 550-551 (2025).  Although a closer call, the hearing examiner did not abuse his discretion in applying this risk elevating factor.

b.  Role of the hearing examiner.  Doe next contends that the hearing examiner abused his discretion by assuming the role of an expert when he stated, "[Doe's] lack of boundaries around a prepubescent child also follows a similar pattern as to the sexual misconduct[] and the governing sex offense . . . . Therefore, I consider this incident under [factor 37] in terms of [Doe's] on-going deviant sexual interest in children."[4]  We disagree.  Absent compelling reason to believe otherwise, we understand the hearing examiner to have used the term "deviant sexual interest" in a descriptive sense rather than as a clinical diagnosis.  Although SORB's regulations do not define "sexual deviance," they use the term in a general sense to refer to sexual misconduct bearing on an offender's dangerousness and recidivism risk, including both misconduct that is related to a mental abnormality and misconduct that is not.  See 803 Code Mass. Regs. § 1.33.

---

[4] See 803 Code Mass. Regs. § 1.33(37).

9

Here, the hearing examiner did not refer to any medical diagnosis of Doe or consider any diagnostic tools or criteria that would have required the testimony of an expert in mental disorders. Cf. Doe, Sex Offender Registry Bd. No. 89230 v. Sex Offender Registry Bd., 452 Mass. 764, 775-776 & n.18 (2008). Instead, the hearing examiner concluded, based on the evidence of the prior sexual offense allegations, that Doe had engaged in a pattern of inappropriate conduct with children. See Doe, No. 10216, 447 Mass. at 786 ("expert testimony is unnecessary in [classification] proceedings," instead, examiners "utilize[] [regulatory] factors . . . in determining the plaintiff's final classification"). This was not error, and thus the hearing examiner neither assumed the role of an expert nor exceeded his authority.

c. Effective assistance of counsel. Doe also argues that he was deprived of his right to effective assistance of counsel because his counsel failed to argue in the Superior Court that (1) the hearing examiner misapplied seven factors, and (2) the hearing examiner erred when he diagnosed Doe with deviant sexual interests without supporting expert testimony. We disagree.

Sex offenders are entitled to effective assistance of counsel at classification proceedings. Poe v. Sex Offender Registry Bd., 456 Mass. 801, 811 (2010). "[T]he civil formulation of the Saferian standard governs claims of

10

ineffectiveness." Id. Under that standard, we first consider "whether there has been serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer" (citation omitted). Id. at 812. If we find that counsel's performance fell measurably below that which might be expected from an ordinary fallible lawyer, then we ask whether there is a reasonable probability that but for the errors, the result of the proceeding would have been different. Id. at 813. Here, the burden is on Doe to prove ineffective assistance of counsel. See Commonwealth v. Hudson, 446 Mass. 709, 715 (2006).

Doe's argument is unpersuasive because Doe has failed to articulate how his counsel's alleged failures prejudiced him. See Doe, Sex Offender Registry Bd. No 22164 v. Sex Offender Registry Bd., 103 Mass. App. Ct. 431, 434 (2023). Furthermore, as discussed above, where Doe has failed to establish that the hearing examiner misapplied the relevant regulatory factors, we cannot conclude that Doe was prejudiced by counsel's performance. See Loe v. Sex Offender Registry Bd., 73 Mass. App. Ct. 673, 677 (2009) ("a party claiming ineffective

assistance must establish that better work might have accomplished something material for [him]" [quotation and citation omitted]).

Judgment affirmed.

By the Court (Neyman, Hershfang & Toone, JJ.[5]),

Clerk

Entered: June 30, 2026.

---

[5] The panelists are listed in order of seniority.